**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|                          |   |                                   |
|--------------------------|---|-----------------------------------|
| PHILIP J. KENNY,         | : |                                   |
|                          | : |                                   |
|    Petitioner, | : | Civil Action No. 14-6100 (JLL) |
|                          | : |                                   |
|    v.     | : | **OPINION**                       |
|                          | : |                                   |
| UNITED STATES OF AMERICA,| : |                                   |
|                          | : |                                   |
|    Respondent. | : |                              |
|                          | : |                                   |

**LINARES**, District Judge:

Presently before the Court is the motion of Philip J. Kenny ("Petitioner") to vacate, set aside, or correct his sentence purportedly brought pursuant to either 28 U.S.C. § 2255 or the All Writs Act, 28 U.S.C. § 1651(a). (ECF No. 1) Respondent, United States of America ("Respondent" or "Government"), filed a response (ECF No. 4), to which Petitioner replied (ECF No. 5). Following a case conference in this matter, Petitioner filed a supplemental brief in support of his motion (ECF No. 7), to which the Government has responded (ECF No. 9). For the following reasons, the Court denies the motion and no certificate of appealability shall issue.

## I.  BACKGROUND

On October 6, 2009, Petitioner was charged by way of a one count indictment of conspiracy to commit extortion under color of official right in violation of the Hobbs Act, 18 U.S.C. § 1951(a). That same day, Petitioner pled guilty to that single count through a written plea agreement. (Criminal Action No. 08-758 at ECF No. 5). This Court therefore held a plea colloquy on October 6, 2009. (Document 3 attached to ECF No. 4 at 4). After questioning Petitioner and determining

that he was knowingly and intelligently waiving his rights to a grand jury indictment and trial (*id.* at 4-21), this Court oversaw the following colloquy which sets forth the factual basis for Petitioner's guilty plea:

> [The Government:]   From at least in or about March 2009 to in or about May 2009, did you serve as the Operations Coordinator for the Hudson County Board of Chosen Freeholders?
>
> [Petitioner]:   Yes.
>
> [The Government]:   During that period, did you successfully run for election to the Municipal Council of Jersey City (Ward B) held on or about May 12th, 2009?
>
> [Petitioner]:   Yes.
>
> [The Government]:   Prior to the election, is it true that you were appointed to fill an open council seat on or about April 6th of 2009?
>
> [Petitioner]:   Yes.
>
> [The Government]:   During this period of time, did you agree to accept and later accept approximately $5,000 from a cooperating witness, who purported to be a real estate developer, who was interested in development in the Greater Jersey City area?
>
> [Petitioner]:   Yes.
>
> [The Government]:   Did you agree to this corrupt payment in exchange [for] your official assistance, action and influence as an anticipated member of the Jersey City Municipal Council, in attempting to obtain certain development approvals on behalf of the [cooperating witness]?
>
> [Petitioner]:   Yes.
>
> [The Government]:   By way of example, on or about March 23rd, 2009, did you meet with a Jersey City official and the [cooperating witness] at a restaurant in Jersey City, New Jersey, where you agreed to accept a $5,000 contribution to be issued in the form of two checks with two different donor names, for $2,500 each?

2

[Petitioner]:  Yes.

[The Government]:  In exchange for this contribution, did you agree to assist the [witness] in obtaining certain development and zoning approvals on a property located at Garfield Avenue in Jersey City, New Jersey?

[Petitioner]:  Yes.

[The Government]:  On or about March [30th], 2009, did you again meet with the Jersey City official and the [witness] at a restaurant in Jersey City, New Jersey?

[Petitioner]:  Yes.

[The Government]:  During the meeting, did you accept a corrupt payment of $5,000 from the [witness] in exchange for your future assistance and influence as a participating member of the Municipal Council of Jersey City?

[Petitioner]:  Yes.

[The Government]:  Did the Jersey City official that attended these meetings arrange your meeting with the [witness] and the subsequent meeting in which you were paid this $5,000?

[Petitioner]:  Yes.

[The Government]:  Did you do all of these acts knowingly and willfully, understanding that your actions were illegal?

[Petitioner]:  Yes.

[The Government]:  As a result of this scheme, did you personally receive and accept a total of $5,000?

[Petitioner]:  Yes.

[The Government]:  Did you agree to forfeit the $5,000 to the United States and admit that these proceeds constitute properties that are subject to forfeiture?

[Petitioner]:  Yes.

[The Government]:    Your Honor, in addition to that factual allocution, the United States would prove beyond a reasonable doubt at trial, that the cooperating witness represented to [Petitioner] and others involved in the conspiracy, that goods had traveled in interstate commerce in his business and affected interstate commerce.   In other words, he did business outside of the State of New Jersey as well as within.

(Document 3 attached to ECF No. 4 at 21-24).   This Court thereafter sentenced Petitioner on May 4, 2010, to twelve months and one day in prison, two years of supervised release, and a $4,000 fine.   (Document 4 attached to ECF No. 4).

After Petitioner was sentenced but before the date on which he was to surrender to the Bureau of Prisons, this Court entered its opinion in *United States v. Manzo*, 714 F. Supp. 2d 486 (D.N.J. 2010), *aff'd*, 636 F.3d 56 (2011).   In that case, this Court dismissed Hobbs Act charges against individuals who had accepted money in exchange for future acts should the individuals be elected to office.   *Id.* at 500.   That conclusion was based on this Court's reasoning that as the *Manzo* defendants were never elected, and therefore remained private citizens as opposed to public officials throughout the conspiracy with which they were charged, the *Manzo* defendants actions were not clearly within the terms of the Hobbs Act.   *Id.* at 496, 500.

Following this Court's ruling in *Manzo* and prior to Petitioner's surrender, this Court held a telephone conference on June 1, 2010.   (Criminal Action No. 09-758 at ECF No. 15, 19). During that conference, counsel for Petitioner requested a stay of Petitioner's sentence until the Third Circuit decided the appeal in *Manzo* as counsel felt that the *Manzo* appeal might affect Petitioner's conviction.   (Document 5 attached to ECF No. 4 at 4-5).   During that conference, this Court ordered supplemental briefing on Petitioner's request for a stay.   (*Id.* at 9).   Petitioner submitted his brief on the *Manzo* issue on June 10, 2010.   (Criminal Action No. 09-758 at ECF

4

No. 16).   The Government submitted its reply brief on June 11, 2010.   (Criminal Action No. 09-758 at ECF No. 17).   On June 21, 2010, this Court issued an order denying the request for a stay as Petitioner's case was distinguishable from *Manzo*.   (Criminal Action No. 09-758 at ECF No. 18).   Petitioner appealed neither his sentence nor this Court's order denying his request for a stay.

Petitioner therefore surrendered on June 21, 2010, and served his sentence.   Petitioner was released from prison on or about May 4, 2011.   (ECF No. 4 at 4).   Following his release from prison, Petitioner hired a new attorney, James Lisa, Esq.   On June 4, 2012, Lisa filed a motion seeking the early termination of Petitioner's period of supervised release.   (Criminal Action No. 09-758 at ECF No. 21).   This Court denied that motion on June 21, 2012.   (Criminal Action No. 09-758 at ECF No. 24).   Petitioner thereafter completed his two year term of supervised release on or about May 3, 2013.   (ECF No. 4 at 4).   On September 23, 2014, Petitioner filed his instant motion which he termed an "Application for Post Conviction Relief," and which was originally construed as a motion to vacate his sentence pursuant to 28 U.S.C. § 2255.   (ECF No. 1).


## II.   DISCUSSION

### A.   Legal Standard Applicable to § 2255 Motions

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his sentence.   Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

5

28 U.S.C. § 2255.

Unless the moving party claims a jurisdictional defect or a Constitutional violation, in order to be entitled to relief the moving party must show that an alleged error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, (or) an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir.) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

**B.   Analysis**

**1.   An evidentiary hearing is not required**

An evidentiary hearing is required to resolve a motion to vacate under 28 U.S.C. § 2255 "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. §2255(b); *United States v. Booth,* 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).   Where the record, viewed in light of the trial judge's personal knowledge of a petitioner's criminal case, conclusively negates the factual predicates asserted by a petitioner or indicate that petitioner is not entitled to relief as a matter of law, no hearing is required. *Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also Booth*, 432 F.3d at 546.   For the reasons set forth below, to the extent that Petitioner's motion is brought pursuant to § 2255 it is barred both as Petitioner was not in custody at the time it was filed and the motion was filed beyond the one year statute of limitations, and to the extent it arises as a writ of error *coram nobis*, Petitioner has failed to show the required sound

6

reasons for his failure to seek relief sooner. An evidentiary hearing is therefore not required to resolve Petitioner's motion.

**2. To the extent that Petitioner's application is a § 2255 motion, that motion is barred by the statute of limitations and because Petitioner was not "in custody" at the time he filed his motion**

Initially, this Court notes that Petitioner does not specify in his initial motion the nature of the type of motion he sought to bring before in this Court, i.e. whether his motion is brought pursuant to § 2255 or as a writ of error *coram nobis* pursuant to the All Writs Act, 28 U.S.C. § 1651(a). In his supplemental brief, however, Petitioner argues that this motion is subject to the one year statute of limitations applicable to § 2255 motions and that the limitations period should be equitably tolled. To the extent that Petitioner's motion is brought pursuant to § 2255, however, this Court lacks the jurisdiction to hear Petitioner's claims.

28 U.S.C. § 2255 provides that a "prisoner **in custody** under sentence of a court established by Act of Congress . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "This 'in custody' requirement is required for subject matter jurisdiction under . . . 28 U.S.C. § 2255(a)." *Diarrassouba v. United States*, Civ. No. 12-2257, 2014 WL 546341, at *2-3 (D.N.J. Feb. 10, 2014). A federal prisoner remains "in custody" during his custodial sentence and during any period of supervised release to which he is sentenced. *See, e.g., United States v. Baird*, 312 F. App'x 449, 450 (3d Cir. 2008). Where a sentence, including any term of supervised release, has fully expired, however, prior to the filing of the habeas motion or petition, the petitioner is not "in custody" for the purposes of the statute

and therefore the district court lacks subject matter jurisdiction to hear his habeas petition.   *See Maleng v. Cook*, 490 U.S. 488, 492-93 (1989) (dealing with this issue in the context of a § 2254 petition); *Diarrassouba*, 2014 WL 546341, at *3 (stating that *Maleng*'s holding applies to § 2255 motions as well as § 2254 habeas petitions).

Here, Petitioner completed both his sentence and term of supervised release by May 2013. Petitioner did not file his motion until more than a year later, in September 2014.   As such, Petitioner was clearly not "in custody" at the time he filed his motion as both his sentence and supervised release had already fully expired.   As such, this Court lacks subject matter jurisdiction to hear his § 2255 claims, and to the extent that Petitioner's motion arises in that context, this Court will deny the motion for lack of jurisdiction.   *Maleng*, 490 U.S. at 492-93; *Diarrassouba*, 2014 WL 546341, at *3.

This Court additionally notes that, even were Petitioner in custody at the time he filed his motion, his motion would also be time barred.   Motions brought pursuant to § 2255 are subject to a one year statute of limitations.   28 U.S.C. § 2255(f).   The limitation period runs from the latest of the following four events:   the date on which Petitioner's conviction becomes final, the date on which an impediment to Petitioner's making a motion is removed, the date on which the right from which Petitioner's claim arises is first recognized by the Supreme Court if Petitioner's claim is based on a newly recognized right which is retroactively applicable to cases currently on collateral review, or the date on which the facts underlying the motion first became discoverable through due diligence.   28 U.S.C. § 2255(f)(1)-(4).   Where the statute runs from the date on which a petitioner's conviction became final, that conviction is final for petitioners who do not file a direct appeal on "the date on which the time for filing . . . an appeal expired."   *See Kapral v. United*

8

*States*, 166 F. 3d 565, 577 (3d Cir. 1999); *see also United States v. Johnson*, 590 F. App'x 176, 177 (3d Cir. 2014).   In a criminal case, the defendant must file his notice of appeal within fourteen days of his sentencing.  *Johnson*, 590 F. App'x at 177; Fed. R. App. P. 4(b)(1)(A)(i).   Even if this Court were to give Petitioner the benefit of the time period during which counsel made his *Manzo* motion, Petitioner's conviction would have become final fourteen days after this Court denied that motion on June 21, 2010, which results in a final date of July 5, 2010.[1]   Absent tolling, then, Petitioner's statute of limitations would have run on July 5, 2011, more than three years before Petitioner filed this motion.

Petitioner argues, however, that he should be entitled to equitable tolling.  "Equitable tolling is a remedy which should be invoked 'only sparingly.'"  *United States v. Bass*, 268 F. App'x 196, 199 (3d Cir. 2008) (quoting *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)).   To establish his entitlement to equitable tolling, a petitioner must "show (1) that he faced 'extraordinary circumstances that stood in the way of timely filing,' and (2) that he exercised reasonable diligence."  *Johnson*, 590 F. App'x at 179 (quoting *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011)).   Diligence in the § 2255 context is determined objectively, taking into account a prisoner's particular circumstances.  *Id.*   Excusable neglect alone is insufficient to warrant the tolling of the statute of limitations.  *United States v. Thomas*, 713 F.3d 165, 174 (3d Cir. 2013).

---

[1] Petitioner argues that the running of the statute of limitations should instead be from the date on which the Third Circuit affirmed *Manzo*.   Petitioner provides no authority in support of this position.   As the statute itself permits the limitations period to begin later only as a result of the recognition of a newly established right pursuant to a decision of the United States Supreme Court, *see* 28 U.S.C. § 2255(f)(3), and not from a decision of the circuit courts, Petitioner's argument is misguided.

In support of his contention that his situation warrants tolling, Petitioner argues that Petitioner hired counsel in May of 2012 who failed to file anything on Petitioner's behalf, and that Petitioner suffered from depression and emotional issues during the three year period.   As to the first argument, this Court notes that Petitioner's hiring of Mr. Lisa occurred nearly a year after the statute had expired even giving Petitioner the benefit of the *Manzo* motion's date as the date of finality.   Likewise, it is clear that Lisa did file a motion for termination of supervised release on Petitioner's behalf, and thus the argument that Lisa abandoned Petitioner appears to be without merit.   As an attorney's malfeasance or nonfeasance does not present an extraordinary circumstance in a non-capital case, that argument provides Petitioner no aid in any event.[2]   *See United States v. Bass*, 268 F. App'x 196, 199 (3d Cir. 2008); *see also Schlueter v. Varner*, 384 F.3d 69, 76 (3d Cir. 2004).   As to Petitioner's second argument, that depression, anxiety, and the stress and monetary troubles associated with losing two properties in Fall 2012 to Hurricane Sandy "undoubtedly caused [Petitioner] difficulty," the case law is clear that severe depression is insufficient to warrant the tolling of the statute of limitations.   *See Hedges v. United States*, 404 F.3d 744, 753 (3d Cir. 2005) (finding that a *pro se* petitioner's argument that he suffered severe depression does not warrant equitable tolling as "mental incompetence, even rising to the level of insanity, does not toll a federal statute of limitations for claims against the Government").   Thus, Petitioner has presented no exceptional circumstances which would warrant equitable tolling.

Petitioner has also failed to show that he acted with reasonable diligence sufficient to warrant tolling.   Petitioner allowed four years to pass before he attempted to challenge his

---

[2] Petitioner has shown neither that Lisa actively misled him nor that Petitioner acted with extreme diligence, and as such the exception to this rule does not apply here.  *See Bass*, 268 F. App'x at 199-200; *Schlueter*, 384 F3d at 76-78.

conviction on *Manzo* grounds, even though he should have been aware of the issue at least at the time his original counsel made the motion to stay Petitioner's sentence on that ground. Petitioner did not file a direct appeal.   Although he hired Lisa in 2012, that representation did not arise until after Petitioner had allowed an entire year to pass without filing a § 2255 motion.   Even after hiring Lisa, Petitioner thereafter sought only to have his period of supervised release shortened and to engage in state court litigation.   The evidence in the record thus establishes that Petitioner made no real efforts to challenge his conviction for some four years after he was sentenced.   As such, this Court cannot find that Petitioner acted with reasonable diligence in pursuing his rights. As Petitioner has shown neither exceptional circumstances nor reasonable diligence, he is not entitled to equitable tolling and his motion would be time barred even if this Court had jurisdiction to hear it under § 2255.

### 3.   Even if this Court construes Petitioner's motion as a petition for a writ of error *coram nobis*, Petitioner is not entitled to relief

Although Petitioner's being out of custody at the time he filed his motion prevents this Court from hearing his motion under § 2255, Petitioner is not completely without recourse to challenge his conviction.   Where a petitioner is no longer in custody but continues to suffer collateral consequences from his conviction, he may file a petition for a writ of error *coram nobis*. *United States v. Biondi*, 600 F. App'x 45, 46 (3d Cir. 2015); *see also United States v. Stoneman*, 870 F.2d 102, 105-06 (3d Cir. 1989).   A writ of error *coram nobis*, however, "is an 'infrequent' and 'extraordinary' form of relief that is reserved for 'exceptional circumstances.'"   *United States v. Babalola*, 248 F. App'x 409, 411 (3d Cir. 2007) (*quoting Stoneman*, 870 F.2d at 106).   Indeed,

11

as the Supreme Court has observed, the remedy of a *coram nobis* petition is so extreme that it "is difficult to conceive of a situation in a federal criminal case today where [*coram nobis* relief] would be necessary or appropriate." *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (quotations omitted).

As the Third Circuit has explained,

> Because of the strong interest in finality of judgments, the standard for a collateral attack on a conviction via a writ of error *coram nobis* is more stringent than the standard applicable on a direct appeal. Indeed, because a defendant seeking *coram nobis* relief has already completed her sentence, the interests in favor of revisiting the judgment are even less than in the habeas context, where the petitioner is still "in custody." Thus, only where there are errors of fact of the *most fundamental kind*, that is, such as to render the proceeding itself irregular and invalid . . . can redress be had, and relief will be granted only when circumstances compel such action to achieve justice. Despite this heavy burden, both the Supreme Court and [the Third Circuit] have reaffirmed the continued existence of *coram nobis* relief in the appropriate circumstances.

> In addition to the cardinal requirement for issuance of the writ that errors of . . . the most fundamental kind had infected the proceedings, this court has articulated several other threshold considerations to *coram nobis* relief. A *coram nobis* petitioner must also show that (1) he is suffering from continuing consequences of the allegedly invalid conviction, (2) there was no remedy available at the time of trial, and that (3) sound reasons exist for failing to seek relief earlier. Of course, earlier proceedings are presumptively correct and the petitioner bears the burden to show otherwise.

*Babalola*, 248 F. App'x at 411-12 (internal quotations and citations omitted); *see also Stoneman*, 870 F.2d at 106, *United States v. Osser*, 864 F.2d 1056, 1059-62. Failure to establish any of the above elements will defeat a petition for *coram nobis* relief. *Stoneman*, 870 F.2d at 106.

Even if this Court were to assume that Petitioner's inability to be publicly employed or hold public office qualifies as a sufficient collateral consequence which this Court could alleviate

by vacating his conviction, *see Biondi*, 600 F. App'x at 46-47, Petitioner has failed to show that sound reasons exist to excuse his failure to seek relief earlier.  The "'sound reason' standard is even stricter than that used to evaluate § 2255 petitions." *Mendoza v. United States*, 690 F.3d 157, 159 (2012), *cert. denied*, 133 S. Ct. 1456 (2013).  As such, the "sound reason" standard presents a higher bar than the one a petitioner must clear to show that he is entitled to equitable tolling in the § 2255 motion context.  *See Id.*; *United States v. Glover*, 541 F. App'x 148, 149-50 (3d Cir. 2013).  The Third Circuit has therefore denied *coram nobis* relief to Petitioners who failed to seek relief for four years, *Mendoza*, 690 F.3d at 159-60, and those who have attempted to argue that mental incompetence presents a sufficiently "sound reason" for delay.  *Glover*, 541 F. App'x at 149-50.  As this Court has explained above, in this case Petitioner allowed more than four years to elapse between the date on which is conviction became final and the date on which he first sought to challenge his conviction.  The only reasons Petitioner provides to excuse that lengthy delay, discussed above in the § 2255 context, would be insufficient to establish equitable tolling in that context.  As the sound reasons bar is higher than that required to warrant equitable tolling, Petitioner has in turn failed to show that there were sound reasons for his delay in seeking relief.  As Petitioner has failed to show sound reasons for his delay in seeking relief, his motion, to the extent that it arises as a *coram nobis* petition, must be denied.  *Stoneman*, 870 F.2d at 106; *see also Mendoza*, 690 F.3d at 159-60; *Glover*, 541 F. App'x at 149-50.

## III.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), Petitioner may not appeal from a final order in a proceeding under § 2255 unless Petitioner has "made a substantial showing of the denial of a

13

constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). As this Court does not have jurisdiction to hear Petitioner's motion to the extent it arises under § 2255, Petitioner's motion would be time barred under § 2255(f) were this Court to have jurisdiction under that statute, and Petitioner has failed to show sound reasons for his failure to seek relief earlier as required for *coram nobis* relief, he has failed to make a substantial showing that he was denied a constitutional right, and no certificate of appealability shall therefore issue.

## IV. CONCLUSION

For the reasons stated above, Petitioner's motion is DENIED, and no certificate of appealability shall issue. An appropriate Order follows.

**IT IS SO ORDERED.**

DATED:     January 6th, 2016

Hon. Jose L. Linares,
United States District Judge

14